_____

No. 95-2337NI
_____

Debora Swanson and            *
Buddy Swanson,                *
                              *
        Appellees,            *
                              *  On Appeal from the United
    v.                        *  States District Court
                              *  for the Northern District
                              *  of Iowa.
White Consolidated Industries, *
Inc., WCI Laundry Division,    *
                              *
        Appellant.            *

_____

Submitted:  January 8, 1996

Filed:  February 20, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, MAGILL and BEAM, Circuit
    Judges.
_____

RICHARD S. ARNOLD, Chief Judge.


    At trial, the jury found an express contract between Debora
Swanson and White Consolidated Industries, WCI Laundry Division
("WCI"), that she was not WCI's employee.  Accordingly, the
District Court[1] held, Ms. Swanson's previously entered personal-
injury judgment against WCI is enforceable.  On appeal, WCI argues
that the District Court should not have submitted Ms. Swanson's
express-contract theory to the jury because the theory was

_____

    [1]The Hon. Donald E. O'Brien, United States District Judge for
the Northern District of Iowa.

unsupported by the evidence.  We affirm.

I.

Ms. Swanson was assigned to work at WCI, testing washing and drying machines, by Gadbury Temporary Employment.  Gadbury is a temporary-employment agency, a "labor broker," which recruits and hires workers and then sends these workers to its clients for temporary placement.  Ms. Swanson was injured on the job when a laundry basket she was carrying broke, causing her to spill clothes, trip, and fall.  Everyone in this case agrees that she was Gadbury's employee, working at WCI, when she was injured; the important question here is, was she WCI's employee also?

After her injury, Ms. Swanson received workers' compensation benefits from Gadbury.  She then sued WCI in the District Court, claiming WCI was liable in tort for her injuries.  WCI contended that Iowa's Workers' Compensation Act provided Ms. Swanson's exclusive remedy and barred her lawsuit.[2]  In motions for summary judgment, Ms. Swanson argued that the Act's exclusive-remedy provision did not apply because she was Gadbury's employee, while WCI insisted that she was its employee also.  The District Court denied these motions.  Early in the trial, however, the Court held as a matter of law that Ms. Swanson was Gadbury's employee, not WCI's, and left the jury to decide only if WCI had been negligent.  The jury found WCI liable for the injuries and awarded damages to

---

[2]Iowa Code Ann. § 85.20 (West 1984) provides:

The rights and remedies provided in this chapter . . . shall be the exclusive and only rights and remedies of [an] employee . . . against:

1.    his or her employer; or

2.    any other employee of such employer . . ..

Ms. Swanson and her husband.

On its first appeal to this Court, WCI claimed the District Court had erred in holding that Ms. Swanson was exclusively Gadbury's employee because the jury could have found an implied contract for hire between WCI and Ms. Swanson. See Swanson v. White Consolidated Industries, Inc., 30 F.3d 971, 973 (8th Cir. 1994). We agreed with WCI that "[a] reasonable jury could have found that Swanson was employed by both Gadbury and WCI," id. at 975 (emphasis in original), and remanded the case for a jury to determine if Ms. Swanson and WCI had formed an employment relationship through an implied contract for hire. At the second trial, Ms. Swanson changed tactics and argued that she and WCI had expressly agreed that she was not WCI's employee, while WCI again asserted an implied agreement that she was. The jury was persuaded by Ms. Swanson's express-contract theory.

WCI now challenges the District Court's jury instructions on three fronts, arguing that (1) the District Court should not have submitted Ms. Swanson's express-contract theory to the jury; (2) the District Court did not adequately instruct the jury on Iowa dual-employment law; and (3) the District Court failed to instruct the jury that the parties' relationship "may not have been what they called it." Because we think the evidence permitted the express-contract instructions, we affirm.

II.

The District Court submitted Ms. Swanson's express-contract theory - that she and WCI had expressly agreed she was not WCI's employee - to the jury in the instructions and in the verdict form. According to WCI, however, the only evidence of an express contract between WCI and Ms. Swanson was Ms. Swanson's testimony that, after she was injured, Theodore Johnson, a WCI manager and Ms. Swanson's supervisor, told her she was Gadbury's employee and not WCI's. WCI

-3-

asserts that this after-the-fact statement was merely Mr. Johnson's opinion and could not by itself create an express contract. Perhaps so, but this statement was not the only evidence of an express agreement. Mr. Johnson also testified that "it was never intended that [Ms. Swanson] be WCI's employee," and that "the understanding" between Ms. Swanson and WCI was that she was not WCI's employee. Alice Hayes, another Gadbury employee assigned to WCI, testified that she had asked Mr. Johnson if she could become a full-time WCI employee but was told she "couldn't work as a WCI employee" and that she was "solely Gadbury's employee." And Ms. Swanson testified that when she entered the WCI facility each day, she had to sign the "visitor's log" at the "security shack." WCI's employees did not sign the log.

Ms. Swanson also produced documentary evidence supporting her express-contract theory. For example, each week, Ms. Swanson completed and signed her time sheet, gave it to Mr. Johnson to sign, and then sent it in to Gadbury. Gadbury would then send her a paycheck. Mr. Johnson signed the time sheet as Gadbury's "client"; Ms. Swanson is identified as Gadbury's "employee." The back side of the time sheet contained a "Client Agreement" with the following language:

> Client agrees that utilization of the employee named on the reverse of this time sheet on either a temporary or permanent basis within six months from the date on time sheet will be through GTE [Gadbury]. If the client desires to hire this person on a permanent basis, it is agreed that notification of this intent will be given to GTE, and that the person will remain on GTE's payroll for a period of eight (8) weeks from the date of notification.

The agreement also stated that the "Client will not entrust GTE employees with the care, custody, or control of cash . . .." According to Ms. Swanson, these time sheets were both "weekly ratifications" and "substantial evidence" of an express agreement

between her and WCI that she was not its employee.  Ms. Swanson
also introduced a Gadbury promotional letter which was sent to WCI
and which assured prospective clients that by hiring temporary
workers,

> [y]ou are not maintaining a permanent workforce or
> guaranteeing work.  The worker is an employee of Gadbury
> Temporary Employment.  We maintain all the insurance and
> taxes.  Thus you save money by avoiding overtime, have
> fewer people on your payroll and avoid paying into large
> benefit programs.

Similarly, one of Gadbury's marketing pamphlets notes that "you can
avoid burnout among your permanent employees due to excessive
overtime . . ..  The temporary employees assigned to you are
employees of Gadbury Temporary Employment."

We are asked to decide only whether, given all the evidence,
the express-agreement theory was a "permissible way[] of resolving
the issues in the case."  Thornton v. First State Bank of Joplin,
4 F.3d 650, 652 (8th Cir. 1993) (quoting Farmland Indus., Inc. v.
Morrison-Quick Grain Corp., 987 F.2d 1335, 1341 (8th Cir. 1993)).[3]
In Iowa, "[a]ll minor details of the contract need not be proven in
the first instance in order to present the issue for the trier of
fact."  Netteland v. Farm Bureau Life Ins. Co., 510 N.W.2d 162, 165
(Iowa App. 1993) (citations omitted).  We think Ms. Swanson
presented sufficient evidence to permit a jury to find an express
contract.  It is true that Ms. Swanson presented no document, with
the heading "express contract," stating in terms that "Ms. Swanson
is not WCI's employee."  That a writing is ambiguous, however, does
not mean it cannot constitute or demonstrate an express contract.

---

[3]In our previous opinion, we noted that "[b]ecause it is
undisputed that no express contract for hire existed, Swanson's
recovery hinges upon whether there existed an implied contract for
hire."  30 F.3d at 973.  Contrary to WCI's suggestion, we did not
say there could not have been an express agreement that Ms. Swanson
was not WCI's employee.

We think a reasonable jury could have interpreted the time sheets, and the "Client Agreement" on the sheets' reverse side, as an express contract between Ms. Swanson and WCI that she was not WCI's employee.  The statements of Mr. Johnson, Ms. Swanson, and Ms. Hayes support this interpretation, as do Gadbury's promotional materials.  Indeed, a reasonable jury could have believed that the reason companies hire temporary workers from brokers like Gadbury in the first place is to avoid taking on costly employees.  We think the District Court, correctly, reviewed the evidence "in the light most favorable to the party proposing the instruction, giving it the benefit of all reasonable, favorable, inferences . . .." Drabik v. Stanley-Bostitch, Inc., 997 F.2d 496, 506 (8th Cir. 1993) (citations omitted).  We therefore reject WCI's first challenge.[4]

We also agree with the District Court that the jury's finding "precludes the defendant, WCI, from having an implied contract that the plaintiff was an employee of WCI."[5]  We therefore do not need to discuss WCI's other objections, because they relate to WCI's implied-contract theory, which the jury did not need to reach.  We disagree, however, with WCI's assertion that it was "prevented . . . from submitting its theory to the jury."  The District Court did instruct the jury about implied contracts; the jury simply accepted Ms. Swanson's express-contract theory instead.

Affirmed.

---

[4]Neither Parson v. Proctor & Gamble Mfg. Co., 514 N.W.2d 891 (Iowa 1994), relied upon by WCI, nor Fletcher v. Apache Hose & Belting Co. Inc., 519 N.W.2d 839 (Iowa App. 1994), controls this case.  In both cases, the court considered whether the facts established, as a matter of law, an implied contract between a temporary worker and a labor broker's client.  Neither case involved an alleged express contract of no employment.

We note that both parties incorrectly cited Parson in their briefs, and urge all counsel to help this Court by paying close attention to their citations.

[5]Judgment Entry (April 25, 1995).

-6-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.